No. 32.—ELIJAH H. HICKS, plaintiff in error *vs*. GEORGE MOORE, MATTHEW H. MYRICK and others, defendants in error.

[1.] A Sheriff for the performance of his legal duty, is only entitled to such compensation therefor, as the law prescribes.

[2.] Where a Sheriff levied on slaves by virtue of an attachment, and while in his possession, worked, and hired them out for his *own use and benefit*, and a verdict of the jury having been returned on an issue directed by the Court, finding that the labour of the slaves was worth the per diem allowance authorized by law, for keeping them: *held* that the Sheriff was bound to account for the same, on a rule against him to pay over the money in his hands, arising from the sale of the property, at the instance of the creditors.

GREEN & CAUSEY, and HALL & WIMBERLY, for the plaintiff in error.

Mr. HALL in his argument before the Supreme Court, relied upon the following positions, and cited the authorities appended.

First. From the moment of the levy, the negroes were in contemplation of law in the custody of the Sheriff, and he was responsible for their forthcoming to answer the final judgment in the cause, whether he kept them in or out of jail. *Story on Bailments, sec.* 128; *Philips* vs. *Bridge,* 11 *Mass. R.* 247 ; *Tyler* vs. *Ulmer,* 12 *Mass. R.* 163; *Congdon* vs. *Cooper,* 15 *Mass. R.* 10; *T. U. P. Charlton R.* 298, 299; *Forbes* vs. *Executors of Morel, R. M. Charlton's R.* 24 ; *Green* vs. *Hern,* 2 *Penn. R.* 167; *Smith* vs. *Hart,* 2 *Bay R.* 395; 8 *Bac. Abr. Tit. Sheriff, (P.)* 721. This last authority though not precisely in point, is certainly analogous to the principles for which we are contending, for in the one case the property of the debtor is in custody to satisfy the demand, in the other his person; and in both cases, it seems that the Sheriff is bound to great diligence for their safe keeping. The same rule was laid down in *Wheeler* vs. *Hambright,* 9 *Sergt. & Rawle, R.* 390 396; *In Fairchild* vs. *Case,* 24 *Wend. R.* 383 ; these cases were cited by Cowen J. with *Elliott* vs. *Duke of Norfolk,* 4 *Term R.* 789, with approbation.

Second. As a necessary consequence of the principles decided in these cases, it follows, that pending an attachment the Sheriff has such special property in the goods levied as will enable him to maintain trespass, trover or replevin against any person whatever, for the removal or injury of the goods. *Story on Bailments, sec.* 125; *Baker* vs. *Miller,* 6 *John. R.* 195; *Blackley* vs. *Sheldon,* 7 *John. R.* 32; *Perley* vs. *Foster,* 9 *Mass. R.* 112 ; *Whittier* vs. *Smith, et al.*

Hicks *vs.* Moore, Myrick et al.

11 *Mass. R.* 212; *Ludden* vs. *Leavitt,* 9 *Mass. R.* 104; *Warren* vs. *Leland,* 9 *Mass. R.* 265; *Gibbs* vs. *Chase,* 10 *Mass. R.* 125; *Story on Bailments, sec.* 127; *Bond* vs. *Padelford,* 13 *Mass. R.* 394.

It is evident from the foregoing cases that the debtor, although he has the general property, cannot maintain trover either against the Sheriff or his bailee, pending a levy.

So on the other hand the plaintiff pending the levy of his attachment, has no right to the use or possession of the property, and can maintain no action for its removal or disturbance. *Blake* vs. *Shaw,* 7 *Mass. R.* 50; *Story on Bailments, sec.* 129; *Ladd* vs. *North,* 2 *Mass. R.* 514.

Neither the plaintiff nor defendant in the attachment being entitled to the custody of the negroes, so neither of them was entitled to the value of their labour. The Sheriff being bound for the property, incurring the whole risk of its production on day of sale, is entitled to its use while under levy, as an incident to his qualified ownership, and as a compensation for his risk.

Third. The Sheriff was not the agent of both the parties, nor of either, but he was the ministerial officer of the land. The idea of a contract implied, to account for the hire or the use, on the part of the Sheriff, is untenable. 1 *Livermore on Agency,* 2. That a Sheriff may render himself liable upon his bond either by nonfeasance or misfeasance in respect to acts which by law he is required to perform as Sheriff, is admitted, but in no other way. *Ex parte Reed,* 4 *Hill, N. Y. R.* 572.

Fourth. The Court erred in permitting the creditors to reach this fund in the hands of the Sheriff by a rule, because the judgment could not protect the Sheriff against an action at the instance of the debtor, who not being a party to the rule, or the judgment thereon, is therefore not bound by it. *Coke Litt.* 2276; 1 *Starkie on Ev.* 217; *and per Ch. J. DeGrey in the Dutchess of Kingston's case; Bradshaw* vs. *Heath,* 13 *Wend. R.* 415; *Aldrich* vs. *Kenney,* 4 *Conn, R.* 380.

Fifth. The Sheriff incurs risk necessarily, and it is for the public benefit. The law compensates for the responsibility which the Sheriff incurs, rather than for the labour he is bound to perform. The law never subjects a party to responsibility without security against the risk, or compensation for incurring it. *See Judge Berrien's decision, R. M. Charlton R.* 25; *also, see Alchin* vs. *Wells,* 5 *Term R.* 470; *Bullen* vs. *Ansley,* 6 *Esp. R.* 111; *Rawstorne* vs. *Wilkinson,* 4 *Maule & Sel. R.* 256; *Taylor* vs. *Ward, Tidd's Prac.*

31

1084; *U. S.* vs. *Ringgold,* 8 *Peters R.* 150; *Mason* vs. *Muncaster,* *(note to* 8*th Peters,* 150;) *Matlock* vs. *Gray & Harper,* 4 *Hawks R.* 1; *Roswell* vs. *Dingley,* 4 *Mass. R.* 411; *Hildreth* vs. *Ellice,* 1 *Caines R.* 192; *Adams* vs. *Hopkins,* 5 *John. R.* 252; *Scott* vs. *Shaw,* 13 *John. R.* 378; *Bolton* vs. *Lawrence,* 9 *Wend. R.* 435; *Parsons* vs. *Bowdowyne,* 17 *Ib.* 14.

HAMMOND, for the defendants in error, replied.

*By the Court*—WARNER, J. delivering the opinion.

[1.] It appears from the record in this case, that a rule was taken in the Court below, calling upon the Sheriff to show cause why he should not pay over to the defendants in error the balance of the money remaining in his hands, arising from the sale of certain negroes, made under attachments which had been levied thereon. The Sheriff resisted the rule, on the ground that he was entitled to retain the money in his hands for fees for dieting the negroes, claiming therefor the sum of $807 62. The defendants in error insisted that the Sheriff had been paid for keeping the negroes, by their work and labour while in his possession. Whereupon an issue was directed by the Court, to be tried by a jury as to that fact. On the trial of that issue, the Court below charged the jury, "that if they believed, from the evidence, that the negroes worked for the Sheriff, and that the value of that labour was equal or greater than the *per diem* allowance for feeding, clothing, and taking care of the negroes, they ought to find for the plaintiff in the rule, and that the Sheriff was the agent of both parties, and was not in law entitled to receive more than his lawful fees, either from the sale or labour of the negroes; and, if he retained his *per diem* allowance, he was bound to account for the value of their labour." The jury found the labour of the negroes was worth the expense of keeping them. The counsel for the Sheriff moved for a new trial, on the ground that the Court erred in its charge to the jury, which motion was overruled; whereupon the counsel for the Sheriff excepted, and now assigns the same for error in this Court. The principal point argued before us was, as to the right of the Sheriff to retain in his hands the sum charged for dieting the negroes, while in his possession under the levy, and our opinion will be confined to that question. The Sheriff is the officer of the law, which points out and defines his duty in the execution of its mandates. He is en-

Hicks *vs*. Moore, Myrick et al.

titled to the compensation which the law prescribes for keeping and dieting the negroes while in his custody under the levy, but *to nothing more*. When the property is sold, he is entitled first to deduct his lawful fees, and then it is his duty to pay the balance over to the creditors. The fund raised from the sale of the [2.] property, in the hands of the Sheriff, is the property of the defendant, until paid over to the creditor's lawful demands, subject, of course, to the liens created upon it by law in favour of the respective creditors. It is the *defendant's money* which pays the Sheriff his fees. Suppose the defendant had paid the Sheriff for keeping the negroes with other money, besides that arising from the sale of the property, will it be pretended that the Sheriff would have the right to retain the amount of his fees from the creditors, and appropriate the same to *his own use?* The jury had found that the Sheriff *has received*, from the work and labour of the defendant's negroes while in his possession, sufficient to indemnify him for keeping them; where is the difference, then, between payment being made to the Sheriff for keeping the negroes by the defendant *in money*, and payment being made to *him by the use of the defendant's property?* In the one case it is a payment by the defendant *in cash*, in the other it is a payment *with his property*. In either view of the question the Sheriff is paid, or the verdict of the jury is not true, which is not for a moment to be presumed. It was contended that the Sheriff was entitled to the labour and hire of the negroes, (for the record shows he hired some of them out, and received the money for their hire,) on account of the risk which he incurred by keeping them out of jail, and that the principles of humanity required the adoption of such a rule.

In reply to this argument we have only to remark, that the law points out the duties and responsibilities of Sheriffs, as well as the compensation allowed them for the performance of the same; and when they take the office upon themselves, they take it *cum onere;* they are the officers of the law, and can have no other compensation than the law gives them. A different construction would, in our judgment, open a door for much fraud and oppression on the part of ministerial officers. Whenever a Sheriff is unwilling to discharge the duties of the office, and incur the responsibilities incident thereto for the compensation which the law prescribes, he should resign the office to those who are.

On the score of humanity, the Sheriff is bound, at his peril, to treat all slaves, while in his custody under levy, with humanity;

that is made a part of his duty by law, which he may not omit to perform, and we are by no means certain, that if Sheriffs were permitted to work slaves while in their possession under levy, for *their own use and benefit*, the principles of humanity would be advanced; certainly the interests of defendants in execution would not, if the slaves should be *overworked*, or injured in the meantime. The law, we think, has placed this question on the proper ground, it points out the duty of the Sheriff, and provides the compensation for the performance of such duty. In this case, the jury having found, by their verdict, that the Sheriff is *already paid*, we are unanimously of the opinion he is not entitled to retain the money in his hands, and that there was no error in the charge of the Court to the jury on this branch of the case. Let the judgment of the Court below be affirmed.